PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON S. FLOWERS, | ) | CASE NO. 5:08 CV 1167 |
| Plaintiff, | ) ) | |
| | ) | JUDGE ALDRICH |
| v. | ) ) | |
| MICHAEL J. ASTRUE, | ) | MAGISTRATE JUDGE PEARSON |
| Commissioner of Social Security, | ) ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff Sharon S. Flowers sought judicial review of the Social Security Administration's final decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 405(g). Pending are the parties' briefs addressing the merits.

Finding that the decision denying benefits to Flowers is based upon proper legal standards and supported by substantial evidence, the Court recommends that the Social Security Administration's ("Agency") final decision be affirmed.

### I. Overview

At the time the Administrative Law Judge ("ALJ") issued the final decision denying Flowers benefits, it was largely undisputed that Flowers was a 49 year-old woman with one year of college education who had been stricken with a severe physical impairment evidenced by hand pain. (Tr. 48, 213, & 221.) At the date of her hearing before the ALJ, Flowers' employment

(5:08 CV 1167)

history consisted primarily of having worked as a process operator at a steel factory and a phlebotomist. (Tr. 59.)

The ALJ found Flowers's residual functional capacity ("RFC") to be as follows:

[T]he claimant has the residual functional capacity to lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently and to sit for 6-8 hours and stand and walk for 6-8 hours in a workday, with normal breaks. The claimant is capable of handling and fingering on a frequent but not repetitive or constant basis, and should avoid concentrated exposure to extremes of cold (cf. Exhibit 8F).

(Tr. 17.) Additionally, the ALJ found that Flowers is "unable to perform any past relevant work." (Tr. 19.)

After reviewing the administrative record as a whole, including the medical and other evidence presented, and the legal standards applied, the Court finds that substantial evidence supports the ALJ's RFC determinations and that the ALJ relied on correct legal standards.

## II. Procedural History

Flowers applied for DIB on August 10, 2004 alleging disability caused by carpel tunnel syndrome since January 29, 2002. The Agency, on October 15, 2004, determined that she was not disabled and not eligible for benefits. Upon reconsideration on April 19, 2005, the Agency again denied Flowers DIB. Consequently, Flowers requested and obtained a hearing before an ALJ on May 10, 2007, where she appeared with counsel and testified. The ALJ denied Flowers benefits on August 28, 2007. Flowers appealed to the Appeals Council that denied review on March 12, 2008, causing the ALJ's denial of DIB to be the final Agency decision.

Seeking a review of the Agency's final decision denying her benefits, Flowers timely filed a Complaint with the Court and asserted the following issues:

(5:08 CV 1167)

> [T]he ALJ erred in 1) devising an incomplete Residual Functional Capacity and 2) improperly rejecting the opinion of Plaintiff's treating physician.

ECF No. 7 at 1.

### III. Standard of Review

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528. 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d at 545 (*quoting Baker v. Heckler*, 730 F.2d 1150, 1149 (8th Cir.1984)). The district court may look into any evidence in the record, regardless of

(5:08 CV 1167)

whether it has been cited by the ALJ. *Id.* The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### IV. Law and Analysis

#### A. Substantial Evidence Supports the ALJ's Residual Functional Capacity

A claimant's RFC is an indication of an individual's work related abilities despite their limitations. *See* 20 C.F.R. § 404.1545(a)(1). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 404.1527(e)(2). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1545(a)(3).

Flowers claims the ALJ incorrectly assessed her RFC for three reasons: 1) The ALJ's RFC limited Flowers to "frequent" handling and fingering instead of "occasional;" 2) The ALJ failed to consider Flowers' migraine headaches in the RFC assessment; and 3) The ALJ failed to consider Flowers' gastrointestinal problems in the RFC assessment. *See* ECF No. 7 at 10-13.

#### 1. The ALJ did not Err by Limiting Flowers to Frequent Handling and Fingering

Substantial evidence exists to support the ALJ's finding that Flowers is limited to frequent handling and fingering. Flowers argues that the ALJ should have followed the opinions of the state agency reviewing physicians and Dr. Scott Bush, a chiropractor, that Flowers was limited to occasional handling and fingering. The Commissioner asserts that the ALJ has the discretion to resolve conflicts of evidence as the finder of fact. The Court agrees.

In her written opinion, the ALJ recited and relied on the medical opinions of examining

(5:08 CV 1167)

physicians Dr. Reichert and Dr. Njus to support the finding that Flowers is limited to frequent handling and fingering. (Tr. 18-19.) Dr. Reichert's examination revealed "multiple inconsistencies" and that Flowers' "subjective complaints far outweigh her objective findings." (Tr. 140.) Dr. Reichert also found that Flowers "does not suffer from left carpal tunnel syndrome" and that he was "unable to assign a cause or source of her current subjective complaints" as "they are not substantiated by the medical examination." (Tr. 140-41.) Dr. Njus found that Flowers' more recent "EMGs and nerve conductions . . . show that she is very improved compared to her previous EMGs in 2002." (Tr. 146.) Dr. Njus also found that Flowers' carpal tunnel surgery on her right hand improved her nerve conductions and that her left side is "very mild, not requiring anything other than conservative management." (Tr. 146.)

      The ALJ noted the opinions of the state agency reviewing physicians and Dr. Bush but concluded that the opinions of medical doctors who actually examined Flowers deserved more weight than the chiropractor, who the ALJ correctly found not to be an acceptable medical source, and the reviewing physicians. *See* 20 C.F.R. § 404.1513(a). Although the opinions of the state agency reviewing physicians conflict somewhat with the opinions of Drs. Reichert and Njus, the ALJ resolved this conflict by relying on medical opinions that were based on actual examinations of Flowers. *See e.g.*, *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) ("The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician."). Thus, because substantial evidence exists to support the ALJ's finding and since the Court may not resolve conflicts of evidence, *Brainard*, 889 F.2d at 681, the ALJ did not err in finding Flowers capable of frequent handling and fingering. *See Her*

-5-

(5:08 CV 1167)

*v. Comm'r of Soc. Sec.*, 203 F.3d at 389-90 (noting that the ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion).

### 2. The ALJ did not Fail to Consider Flowers' Migraine Headaches in the RFC Assessment

Flowers' complains that the ALJ omitted, and thereby failed to consider, her migraine headaches as a limitation in the RFC assessment. The Commissioner asserts that the record does not contain a physician's opinion or other objective medical evidence relating to migraine headaches limiting Flowers' ability to work and additionally, that Flowers did not present testimony about such limitations. The Court finds the record to be devoid of evidence substantiating Flowers' functional limitation caused by migraine headaches.

Upon review of the record, the Court cannot find any documented medical opinions or objective medical evidence substantiating Flowers' alleged impairment due to migraine headaches that limit her ability to work. There is no medical evidence present in the record that Flowers' migraine headaches constitute an impairment according to Agency regulations. *See e.g.*, 20 C.F.R. §§ 404.1508, 404.1529(b). The record contains documentation of only two (2) emergency room visits — one visit related to a "migraine headache" and the other a headache. (Tr. 191 & 198.) Moreover, Flowers' testified that she experiences a migraine headache "maybe once a month, once every other month." (Tr. 219.) Based on the scant mention of migraine headaches in the record and the complete lack of medical evidence of signs, symptoms, and/or laboratory findings establishing an impairment caused by migraine headaches, the ALJ did not fail to consider Flowers' migraine headaches in her RFC assessment. *See* 20 C.F.R. §§

(5:08 CV 1167)

404.1508, 404.1529(b).

### 3. The ALJ did not Fail to Consider Flowers' Gastrointestinal Problems in the RFC Assessment

Similar to her argument above, Flowers' complains that the ALJ omitted her gastrointestinal symptoms from the RFC assessment. Flowers asserts that medical signs and laboratory findings exist in the record that support her gastrointestinal impairment. The Commissioner argues the opposite stating that the record is void of such support for a gastrointestinal impairment. Flowers' alleged error is not well taken.

The record is replete with evidence of Flowers' subjective complaints of gastrointestinal symptoms. Evidence of a medically determinable impairment, however, is not documented in the record. Flowers had numerous visits with physicians and thorough medical testing in an attempt to identify what may be the cause of her gastrointestinal symptoms. Flowers' gastroenterologist, Dr. Maycon, could not make a definitive diagnosis after several tests and examinations. Given that a definitive diagnosis could not be made does not justify an ALJ ignoring a claimant's impairment, which is established by clinical findings, in an RFC assessment. *See e.g.*, 20 C.F.R. §§ 404.1508, 404.1529(b). In Flowers' case, however, there are no clinical findings establishing that Flowers has a gastrointestinal impairment.

Flowers claims that the record is "well documented" with evidence of a gastrointestinal impairment and that Dr. Maycon made clinical findings of "anorectal inflammation, possible irritable bowel disease, and thickening cecum." ECF No. 7 at 12. A review of Dr. Maycon's notations reveal the only clinical finding he made "was some thickening of the cecum" based on a capsule enteroscopy. (Tr. 187 & 200.) A question mark followed the terms "anorectal

(5:08 CV 1167)

inflammation" and "IBD" (irritable bowel disease), which infers Dr. Maycon suspects these conditions may be "possible," as quoted in Flowers' brief cited above, but not definitively found to be present based on the objective medical tests. Thus, because the record contains no clinical findings establishing a medically determinable gastrointestinal impairment, severe or otherwise, the ALJ did not fail to consider Flowers' gastrointestinal symptoms in the RFC assessment.

### B. The ALJ did not Violate the Treating Physician Rule

Flowers' claims the ALJ violated the treating physician rule because the ALJ provided no explanation for omitting from the RFC assessment Dr. Maycon's limitation requiring Flowers to take unscheduled restroom breaks during the day. The Commissioner argues that Dr. Maycon did not provide a medical opinion or limitation requiring unscheduled restroom breaks for the ALJ to consider.

An ALJ must give the opinion of a treating source controlling weight if she finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (*quoting* 20 C.F.R. § 404.1527(d)(2)). Deference is due, however, only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion. *Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir. 1976). Mere diagnosis of a condition is not indicative of a disabling functional debilitation. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).

As discussed above, not only is there no diagnosis of a condition, there is no finding of a gastrointestinal impairment for the ALJ to consider. Therefore, Dr. Maycon's affirmative answer

(5:08 CV 1167)

to the question: "Will your patient sometimes need to take unscheduled restroom breaks during an 8 hour working day?" (Tr. 202.), does not amount to a medical opinion falling within the purview of the treating source rule. Furthermore, Dr. Maycon's determination regarding the need for unscheduled restroom breaks is not based on "well-supported [] medically acceptable clinical and laboratory diagnostic techniques." *Wilson*, 378 F.3d at 544. Dr. Maycon based his determination on Flowers' own description of her symptoms.

Assuming *arguendo*, if Flowers' need for unscheduled restroom breaks constituted a limitation for the ALJ's consideration, then Dr. Maycon did not provide pertinent details such as: (1) how often the need would arise, (2) how long the breaks would keep Flowers away from her work station, or (3) how much advance notice Flowers would have, *e.g.* would the need be urgent or allow for planning. (Tr. 202.) Moreover, Dr. Maycon, in his treatment notes, commented that Flowers has bowel movements four to five times a day. (Tr. 187.) During an 8-hour work-day, this calculates to approximately once or twice a shift; Flowers failed to explain convincingly how this "limitation" renders her disabled and limits her ability to work.

In sum, Flowers has not been diagnosed with a medically determinable impairment; therefore, the ALJ did not fail to follow the treating source rule regarding Dr. Maycon's response that Flowers sometimes needs to take unscheduled restroom breaks.

(5:08 CV 1167)

### V. Conclusion and Recommendation

For the reasons provided above, the Court recommends that the ALJ's decision be affirmed in its entirety and that the referral to the undersigned be terminated.

|  |  |
|---|---|
| June 17, 2009 | s/ *Benita Y. Pearson* |
| Date | United States Magistrate Judge |

### OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).